UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INNER CIRCLE SPORTS LLC,<br><br>                    Plaintiff,<br><br>-against-<br><br>BLUESTONE EQUITY PARTNERS, et al.,<br><br>                    Defendants. | No. 23 CV 8126 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Kyle Charters' motion to compel arbitration based on the rules and regulations of the Financial Industry Regulatory Authority ("FINRA").[1] Plaintiff Inner Circle Sports ("ICS") opposes only to argue that the Court, not FINRA, should determine whether this dispute is arbitrable.[2] For the following reasons, Charters' motion to compel arbitration is granted, and the case is stayed pending the outcome of arbitration.

## I.   Background

The Court recounts the following facts from ICS' first amended complaint, (see Am. Compl. ("AC"), dated Jan. 17, 2024 [dkt.

---

[1] (See Notice of Mot. to Compel Arbitration ("Notice of Mot. to Compel"), dated Nov. 14, 2023 [dkt. no. 26]; Decl. of Alisha L. McCarthy ("McCarthy Decl."), dated Nov. 14, 2023 [dkt. no. 26-1]; Mem. of Law in Supp. of Mot. to Compel Arbitration ("Charters Br."), dated Nov. 14, 2023 [dkt. no. 27]; Reply Mem. of Law in Further Supp. of Mot. to Compel Arbitration ("Charters Reply"), dated Jan. 19, 2024 [dkt. no. 39].)

[2] (See Mem. of Law in Opp'n to Mot. to Compel Arbitration ("Opp'n Br."), dated Jan. 5, 2024 [dkt. no. 32].)

no. 38]), and the declarations and exhibits submitted in connection with the parties' briefing.

### A.  Factual Background

This dispute arises between an employer, ICS, and its former employee, Kyle Charters.  ICS, "a registered broker-dealer," employed Charters between July 1, 2014 and early February 2023.  (See AC, Ex. 5 ("Employment Letter") at 2; AC ¶¶ 17, 62.)

On December 9, 2013, Charters signed and accepted an offer letter from ICS.  (See Employment Letter at 6.)  Under the terms of the Employment Letter, Charters was responsible for "the origination of business, the execution of transactions[,] and the building of relationships for [ICS]."  (Id. at 1.)  The Employment Letter also included a forum selection provision stating that, in accordance with the laws of New York, the "EXCLUSIVE JURISDICTION WILL BE IN A COURT OF COMPETENT JURISDICTION IN THE CITY OF NEW YORK," and Charters "WAIVE[D] OBJECTION TO THE JURISDICTION OR TO THE LAYING OF VENUE IN ANY SUCH COURT."  (Id. at 5.)

Nearly seven months later, on July 1, 2014, Charters began working at ICS as an investment banking associate.  (AC ¶ 17.)  That same month, he registered with FINRA.  (Id. ¶ 49; Notice of Mot. to Compel, Ex. 2 ("BrokerCheck Report") at 5.)  Charters claims that, upon joining ICS, he was required to complete and sign the Uniform Application for Securities Industry Registration

2

or Transfer (or "Form U-4").  (See Charters Br. at 2 (citing BrokerCheck Report at 5).)

In support of his motion, Charters provides a copy of a BrokerCheck Report to confirm his registration with FINRA.  The employment history section of the BrokerCheck Report pulls information from Charters' "most recently filed Form U[-]4."  (See BrokerCheck Report at 5.)  Curiously, Charters does not provide the Court with a copy of this completed Form U-4.  Instead, he submits a copy of the boilerplate form available online and draws the Court's attention to the form's arbitration clause, which states:  "I agree to arbitrate any dispute, claim[,] or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA] as may be amended from time to time . . . ."  (Notice of Mot. to Compel, Ex. 3 ("Form U-4 Template") at 15A.4.)  According to Charters, the Court can infer from the template and fact that the BrokerCheck Report includes his employment history that Charters must have executed a Form U-4 and is bound by its arbitration clause.  (See Charters Br. at 2-3.)

**B.   Procedural History**

On September 13, 2023, counsel for ICS emailed a copy of the original complaint to counsel for Charters.  (McCarthy Decl. ¶ 4.)  That same day, counsel for Charters replied that "[a]ny dispute arising out of or relating to [Charters'] employment with ICS is

3

subject to mandatory arbitration under FINRA's rules" and that Charters would "immediately make a motion to compel arbitration" if ICS proceeded to file a complaint in federal court. (Id.) Two days later, on September 15, 2023, ICS filed its original complaint in the Southern District of New York. (Id. ¶ 5; dkt. no. 3.)

As promised, on November 14, 2023, Charters filed a motion to compel arbitration and to stay this proceeding in accordance with FINRA's rules and regulations. On January 5, 2024, ICS filed its opposition to the instant motion and then, on January 17, 2024, filed the AC. The AC brings the following counts against Charters: unfair competition (Count I), New York common law misappropriation of trade secrets and confidential information (Count III), the misappropriation of trade secrets under federal law (Count IV), fraud (Count V), breach of contract (Count VIII), breach of a fiduciary duty and duty of loyalty (Count IX), unjust enrichment (Count X), conversion (Count XI), and faithless servant (Count XII). (See AC ¶¶ 238-42, 251-80, 296-331.)

On January 19, 2024, Charters filed a reply and a letter renewing his motion to compel in light of the AC. (See generally Charters Reply; Letter, dated Jan. 19, 2024 [dkt. no. 40].)

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, West, Inc. v. Jackson,

561 U.S. 63, 67 (2010).  Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable," unless "such grounds as exist at law or in equity" justify revocation.  9 U.S.C. § 2.

Generally, a court must determine the existence of a valid arbitration agreement and its scope.  See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Moreover, where the parties agreed to delegate the question of arbitrability to an arbitrator, a court cannot override it in favor of deciding the arbitrability issue.  Shafer v. Stanley, No. 20 Civ. 11047 (PGG), 2023 WL 8100717, at *8 (S.D.N.Y. Nov. 21, 2023) (citation omitted).

Additionally, on a motion to compel arbitration, courts "appl[y] a standard similar to that applicable for a motion for summary judgment."  Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted).  A court therefore considers "all relevant, admissible evidence submitted by the parties" and "draw[s] all reasonable inferences in favor of the non-moving party."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).  Where the facts in the record are undisputed, and

5

arbitrability can be decided as a matter of law, a court may rule on the legal issue and avoid the need for further court proceedings.  See Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011).  Once satisfied that the issue is referrable to arbitration, a court must stay the proceedings and refer the dispute.  9 U.S.C. §§ 3-4.

**III. Discussion**

Charters moves, pursuant to the FAA, to compel arbitration.  Charters argues that FINRA's Code of Arbitration Procedure for Industry Disputes (the "Code") mandates arbitration where, as here, there is an employment-related dispute between a "Member" and an "Associated Person."  (See Charters Br. at 7-8.)  To the extent there is any dispute concerning arbitrability of the merits, Charters argues, FINRA is the proper authority to decide the matter.  (Id. at 8.)  In opposition, ICS contends that courts determine arbitrability and that the Employment Letter governs this dispute.  (See Opp'n Br. at 2-3.)  Because the parties do not dispute the underlying facts, the Court is presented with legal questions of whether the parties agreed to arbitrate, and who should determine arbitrability.

Charters asserts that certain of the FINRA Code provisions and the Form U-4 subject this dispute to arbitration.  They clearly do.  For starters, "[m]embership in FINRA constitutes an agreement to adhere to FINRA's rules and regulations, including

6

its Code and relevant arbitration provisions contained therein." See Christensen v. Nauman, 73 F. Supp. 3d 405, 411 (S.D.N.Y. 2014) (cleaned up); see also Metro. Life Ins. Co. v. Bucsek, 919 F.3d 184, 193 (2d Cir. 2019) ("[I]f material events that gave rise to a dispute occurred while a party was a functioning member, that party is bound by the Code for the purposes of that dispute . . . ."). Specifically, the Code requires parties to arbitrate any dispute that "arises out of the business activities of," and is between, a "Member" and an "Associated Person." See FINRA Rule 13200. Because the parties do not dispute that ICS is a Member and Charters is an Associated Person under the Code, (see Opp'n Br. at 3), the only question is whether this dispute arises out of ICS and Charters' business activities.

To that end, courts in this district have construed the term "business activities" to include "employment-related disputes between a FINRA member and an associated person." See Christensen, 73 F. Supp. 3d at 412 (collecting cases). This category encompasses "allegations underlying claims [that] 'touch matters' covered by the parties' business activities," regardless of "the legal labels attached to them." Monk v. Goldman Sachs & Co. LLC, No. 22-cv-6056 (JMF), 2023 WL 22618, at *5 (S.D.N.Y. Jan. 3, 2023) (citation omitted). Because ICS asserts claims based on Charters' alleged breach of his employment obligations, (Opp'n Br. at 3), this dispute clearly relates to Charters' employment and therefore

7

falls within the scope of Rule 13200.  Thus, the FINRA Code requires ICS and Charters to arbitrate this particular dispute.

Moreover, courts in this Circuit construe a Form U-4 as a binding arbitration agreement.  See Alliance Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 126-27 (2d Cir. 2006) (compelling arbitration based on a Form U-4); Filloramo v. NewAlliance Invs., Inc., No. 3:06CV01825 (AVC), 2007 WL 1206736, at *4 (D. Conn. Apr. 23, 2007) (determining that a Form U-4 is "powerful evidence of an agreement to submit to arbitration"). Because ICS does not dispute that Charters signed and was subject to a Form U-4, the Court presumes that Charters executed a valid Form U-4, further evidencing the parties' agreement to arbitrate any "dispute, claim[,] or controversy that may arise between [Charters] and [his] firm."  See Form U-4 Template, 15A.4; see also Greenberg v. Ameriprise Fin. Servs., Inc., No. 15-cv-3589 (ADS) (AYS), 2016 WL 3526025, at *5 (E.D.N.Y. Mar. 31, 2016) (finding that failure to produce a signed Form U-4 did not raise a genuine issue of fact).  Accordingly, the FINRA Code and the Form U-4 clearly impose obligations to arbitrate on ICS and Charters.

In opposition, ICS argues that courts, not arbitrators, must determine whether a dispute is arbitrable. (Opp'n Br. at 3.) ICS' position suggests that, regardless of whether the parties previously contracted to arbitrate a particular dispute, a party

8

must still file a lawsuit before proceeding to arbitration. This position is inconsistent with the law and common sense. Court oversight is not needed where an arbitration agreement provides "clear and unmistakable evidence" that the question should be referred to an arbitrator. See Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019); Kaplan, 514 U.S. at 944. As relevant here, Rule 13413 of the Code states that "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code." FINRA Rule 13413. The plain text of Rule 13413 "clearly and unmistakably evinces an intent to submit any disputes over the interpretation of the Code rules to arbitration." Murray v. UBS Secs., LLC, 2014 WL 285093, at *12 (S.D.N.Y. Jan. 27, 2014) (quoting Alliance Bernstein, 445 F.3d at 127). ICS offers no evidence to the contrary in its opposition. See Hines v. Overstock.com, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) (discussing an opposing party's burden).

Instead, ICS asserts only that the Court should not presume that the arbitration provisions apply to this dispute "since [the Employment Letter] was executed seven months before [Charters] was registered with FINRA . . . ." (Opp'n Br. at 3.) But "[i]t is a well settled principle of contract law that a new agreement between the same parties on the same subject matter super[s]edes the old agreement." Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc.,

9

132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001).  Because Charters registered with FINRA and executed a Form U-4 after he executed the Employment Letter, the arbitration provisions supersede the forum selection clause with respect to disputes arising from the business activities of ICS and Charters.

Accordingly, the Court finds that the FINRA Code and the Form U-4 mandate arbitration of this particular dispute, and the Court refers the matter to arbitration.

**IV. Conclusion**

For the foregoing reasons, Charters' motion to compel arbitration, (dkt. no. 26), is granted.  The Clerk of the Court is directed to stay the case pending the outcome of arbitration.

**SO ORDERED.**

Dated:    September 18, 2024
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge